NATIONAL MUTUAL INSURANCE COMPANY, APPELLEE, *v.* REISER, APPELLEE; WESTFIELD COMPANIES, A.K.A. WESTFIELD INSURANCE COMPANY, APPELLANT.

(No. 83AP-882 — Decided March 29, 1984.)

*Messrs. Isaac, Brant, Ledman & Becker, Mr. Charles E. Brand* and *Mr. J. Stephen Teetor,* for plaintiff-appellee.

*Messrs. Smith, Clark & Holzapfel* and *Mr. John E. Holzapfel,* for defendant-appellee.

*Messrs. Vorys, Sater, Seymour & Pease* and *Mr. J. Scott Jamieson,* for defendant-appellant.

WHITESIDE, J. Defendant-appellant, Westfield Companies, appeals from a judgment of the Franklin County Court of Common Pleas and raises four assignments of error, as follows:

"I. The trial court erred when it concluded that the pickup truck being operated by Michael R. Slagle at the time of the accident was not furnished for his regular use.

"II. The trial court erred when it concluded that the pickup truck being operated by Michael R. Slagle was a private passenger automobile.

"III. The trial court erred when it concluded that the pickup truck being operated by Michael R. Slagle was not being used by him in his business or occupation.

"IV. The trial court erred when it concluded that Michael R. Slagle reasonably believed that he was operating the the pickup truck with the permission of the owner."

This action in declaratory judgment was brought by plaintiff, National Mutual Insurance Company, for a declaration as to whether a policy issued by defendant Westfield Insurance Com-

pany to the stepfather of Michael Slagle provided coverage for Slagle in his operation of a pickup truck which was involved in an accident with an automobile operated by defendant Jacque K. Reiser.

At the time, Slagle was sixteen years old and had been issued a temporary driving permit the day before. The pickup truck was in the possession of Richard Rudd, a licensed driver and employer of Slagle. Rudd was riding as a passenger in the pickup truck at the time of the accident. There is a conflict in the evidence as to whether, at the time of the accident, Rudd and Slagle were on the way to work or on the way to pick up Rudd's wife at a hospital where she was being discharged as a patient.

Rudd was engaged in the construction business, and Slagle indicated that he thought that, at the time of the accident, they were on their way to the job site, which apparently was a house upon which some remodeling work was being performed. Rudd, on the other hand, indicated that they were on their way to the hospital to pick up Rudd's wife, who was discharged from the hospital on that date. Both testified that Slagle had come to Rudd's home to get a ride to work, and that, just prior to the accident, they had taken Rudd's two children to a babysitter.

Rudd testified that the pickup truck was his only family transportation, being used by both him and his wife for family transportation purposes, although about two percent of the use of the truck was for business purposes during the day to run errands from the job site. Slagle testified that, upon his obtaining an operator's (or chauffeur's) license, he anticipated driving the truck regularly with respect to those errands, although he was not specific as to the amount of driving that would be involved in his work but did indicate that one of the older employees of Rudd had

recently had his driver's license suspended.

Rudd drove the pickup truck to the babysitter's home, but when they left the babysitter's, he permitted Slagle, who had received his temporary permit the day before, to drive the pickup truck. Predicated upon this evidence, the trial court found that there was coverage under defendant Westfield's policy, finding the pickup truck to be a "private passenger automobile," as defined in the policy.

We find defendant Westfield's first assignment of error not to be well-taken. There is competent, credible evidence that the pickup truck was not being furnished for Slagle's regular use at the time. Rather, Rudd's testimony is that the vehicle was owned by his father, and furnished for his, Rudd's, personal use and that of his family with only two percent of the total use being in connection with his business. Although Slagle testified that he expected to perform most of this business use of the truck, he most certainly was in no position to do so at the time of the accident, inasmuch as he did not have a driver's license, having been issued a temporary permit only the day before. Factual findings supported by competent, credible evidence will not be disturbed upon appeal. *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261].

The second assignment of error raises the basic issue involved in the case, that is, whether the pickup truck is a private passenger automobile within the policy definition. With respect to liability coverage, the policy provides that:

"The following are insured under Part 1:

"* * *

"(b) with respect to a non-owned automobile,

"* * *

"(2) any relative, but only with

respect to a private passenger automobile * * *."

The policy defines non-owned automobile as being "an automobile * * * not owned by or furnished for the regular use of either the named insured or any relative * * *." This was the issue raised by the first assignment of error.

The policy goes on to define private passenger automobile as "a four-wheel private passenger, station wagon, or a jeep type automobile." The policy then defines utility automobile as "an automobile, other than a farm automobile, with a load capacity of fifteen hundred pounds or less of the pickup body, sedan delivery or panel truck type not used for business or commercial purposes." Westfield contends that the pickup truck in question was a utility automobile. It does meet that definition since the evidence indicates its capacity was one-half ton, and it was an automobile of the pickup-body type. There is, however, an exclusion to the definition, so that an automobile otherwise meeting the definition is not a utility automobile if it is used for business or commercial purposes. There is no such limitation in the definition of private passenger automobile.

A farm automobile as defined in the policy is "an automobile of the truck type with a load capacity of fifteen hundred pounds or less not used for business or commercial purposes other than farming." Under this definition, it is not necessary that the vehicle be used for farming but only that it be used for no other business or commercial purposes and be an automobile of the truck type. Thus, if a vehicle with a capacity of fifteen-hundred pounds or less of the pickup-body type also was of the truck type, it would be a farm automobile, rather than a utility automobile, regardless of its use for purposes other than business or commercial.

Although Westfield may be correct that the automobile in question meets the policy definition of utility automobile, this is not determinative if it also meets the definition of private passenger automobile. The two definitions are not mutually exclusive under this policy, which includes both a station wagon and jeep-type automobile within the definition of private passenger automobile, even if it is not otherwise a private passenger automobile. Thus, the definition does not define the term as being a four-wheel private passenger automobile, including those of the station wagon or jeep type, but, instead, creates three categories of private passenger automobiles; namely, private passenger, station wagon and jeep.

Rudd testified that the pickup truck in question was used primarily as a family automobile for the purpose of affording family transportation, including the carrying of passengers. Under modern-day usage, a vehicle of the pickup-body type is sometimes used as a family private passenger vehicle for ordinary family purposes. Clearly, the vehicle in question had just been used as a passenger vehicle to take the children to a babysitter and, according to Rudd, was going to be used as a passenger vehicle to bring his wife home from the hospital and also was being used, according to Slagle, as a passenger vehicle to transport Rudd and Slagle to work.

We recognize that there is authority in other jurisdictions holding under similar circumstances with respect to similar definitions that a pickup truck is not a private passenger vehicle, as well as cases holding that it is. In general, the older cases tend to find a pickup truck not to be a private passenger automobile, while more recent cases find that it may be. Modern-day usage of vehicles has changed some of our former concepts. Pickup-body-type automobiles are used as family vehicles affording family passenger transportation by some families. Obviously, a pickup-body-

type automobile also can be used as a truck for transportation of property. However, most private passenger automobiles contain a trunk which can be used for the same purpose, although its capacity may be less. Likewise, a station wagon which is clearly within the definition of private passenger automobile may often be used solely for transporting property, rather than persons.

In determining the issue in this case, the trial court stated that: "The vehicle must be examined * * * in light of its use at the time," and that "it was undoubtedly being used as a private passenger automobile at the time of the accident in question." As the trial court further noted, the vehicle in question "can be included under both the private passenger automobile and the utility automobile definitions." The factual findings as to use of the vehicle at the time are supported by competent, credible evidence and cannot be properly interfered with by this court on appeal.

The definitions in this policy create considerable ambiguity when attempted to be applied to specific vehicles since the definitions overlap and are not mutually exclusive. Assuming that, under modern-day circumstances and general usage, a pickup-body-type automobile can under some circumstances be found not to be also a private passenger automobile, we find no error in the trial court's looking to the actual use at the time in determining the applicability of the policy definitions under the circumstances of this case, inasmuch as, clearly, a pickup-body-type automobile can be deemed to be a private passenger automobile in instances under modern-day usage. A pickup-body-type automobile used solely and exclusively as a family automobile for family transportation of family members is a private passenger automobile just as much as a more traditional type having a front and back seat with a trunk for hauling property, rather than a single bench seat

with a truck-type bed for hauling property. We find no basis for interfering with the trial court's findings from a factual standpoint and find no error in the trial court's legal conclusions as to the policy interpretations. Thus, we find no error in the trial court's finding that the vehicle in question was a private passenger automobile within the policy definition. The second assignment of error is not well-taken.

By the third assignment of error, Westfield contends that the trial court erred in finding that the vehicle was not being used by Slagle in his business or occupation. If Westfield's contentions were correct and the vehicle was being used for commercial purposes at the time, it could not be a utility automobile within the policy definition since that definition excludes automobiles being used for business or commercial purposes from the definition. However, the definition of private passenger automobile does not preclude the incidental business or commercial use of the vehicle. Rather, it makes no exception for business or commercial use. In this regard, Westfield points to exclusion (h) of the policy, which excludes coverage with respect to an automobile being used for business purposes by the insured involved, in this case, Slagle. Thus, if Slagle was operating the vehicle as part of his employment, even as a paid chauffeur for Rudd, the exclusion would apply. However, the trial court found to the contrary, and there is competent, credible evidence supporting this finding. In fact, it is highly unlikely that it would be proper for Slagle under the facts and circumstances herein involved to be operating a motor vehicle as part of his business or occupation, inasmuch as he was only sixteen years old and had only a temporary permit. There is no indication that he was authorized to operate a motor vehicle as part of his employment; rather, every indication is to the contrary since he had only the

temporary permit which he had obtained the day before.

Furthermore, operating a motor vehicle on the way to work or the way home from work does not constitute the operation of a motor vehicle in one's business or occupation within this policy exclusion. In addition, as noted by the trial court, Slagle's operation of the pickup was as a result of an accommodation by Rudd to Slagle so that he could gain driving experience, rather than an accommodation of Slagle for the benefit of Rudd. While Slagle testified that Rudd did not like to drive, Rudd's testimony was to the effect that Slagle slid over into the driver's seat when Rudd took his children to the babysitter's and, upon his return, Rudd acquiesced in Slagle's driving. The third assignment of error is not well-taken.

Likewise, the fourth assignment of error is not well-taken. There is nothing in the record supporting this contention of Westfield that Slagle was not driving with the permission of the owner of the vehicle. Obviously, Slagle assumed that Rudd was the owner of the vehicle and had given him permission to operate it, while, in fact, Rudd's father was the owner. However, Rudd's testimony indicates that, although the title was in his father's name, it was furnished to Rudd for his regular use and that he had full control over the use of the vehicle. There is nothing in the record even hinting that Rudd's father in any way objected to Rudd's permitting Slagle to operate the vehicle, even though Slagle had obtained his temporary driving permit only the day before. The evidence indicates that, as between Rudd and his father, the vehicle was treated as being Rudd's, although technically the title was in the father's name. There simply is no evidence to support Westfield's contention.

For the foregoing reasons, all four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

REILLY and NORRIS, JJ., concur.